# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**PHILLIP LASTER, SR., and ASHANTA LASTER,**

*Plaintiffs,*

v.

CAUSE NO. 3:24-CV-20-CWR-ASH

**RANKIN COUNTY SCHOOL DISTRICT, STEVEN BUSH, UPSTREAM REHABILITATION, INC., and DRAYER PHYSICAL THERAPY INSTITUTE LLC,**

*Defendants.*

## MEMORANDUM OPINION AND ORDER

Before the Court is a motion to dismiss filed by Defendant Rankin County School District ("RCSD"). Docket No. 36. The motion is fully briefed and ready for adjudication. For the reasons that follow, RCSD's motion is denied.

### Factual Background

Phillip Laster, Senior, and Ashanta Laster (together, "Plaintiffs," or "the Lasters"), filed this action on behalf of themselves and as representatives and heirs of the estate of their son, Phillip "Trey" Laster, Junior. The allegations of the operative complaint, which must be taken as true for purposes of the present motion, included the following:

On August 1, 2022, Trey was seventeen years old and excited to begin his senior year and final football season at Brandon High School. Steven Bush, worked as the athletic trainer at Brandon High School, although he was formally employed by Drayer Physical Therapy Institute—a subsidiary of Upstream Rehabilitation. The first football practice of the school

1

year began at 4:00 pm, during the hottest part of the day. The heat index was 103 degrees Fahrenheit on the field.

Because it was the first day of practice, the football players had not yet completed any acclimatization period. Trey's size—six feet one inch tall and 328 pounds—made him especially prone to heat exhaustion and put him in the highest risk category for exertional heat stroke ("EHS"). When Trey arrived at practice, his coaches immediately began making him do wind sprints with intense interval workouts including up-downs, pushups, and sit-ups. Trey was not provided any breaks during this workout. While running, he began exhibiting signs of heat exhaustion including stumbling, dizziness, disorientation, and nausea.

At some point during this conditioning, Trey vomited on the field. His coaches did not check his body temperature or begin a cooling and rehydration process. Instead, they required Trey to continue sprinting. Ultimately, Trey vomited again, then lost consciousness.

Defendants lacked the proper training, or equipment to recognize and address EHS. Rather than treat Trey for the symptoms of EHS, Defendants kept Trey on the ground for several minutes before placing him in the back of a hot pick-up truck, which only served to increase his body temperature. When emergency responders arrived at the practice field, they removed Trey from the truck bed and conducted CPR.

By the time Trey was transported to the hospital, it was too late. Trey was pronounced deceased. The cause of his death was exertional heat stroke.

Days prior to these events, the Mississippi High School Activities Association ("MHSAA") and the National Federation of High Schools ("NFHS") warned their members, including RCSD, of the dangers posed by EHS and provided instructions regarding

preventative measures to avoid and treat it. Despite these warnings, at the time of Trey's death, RCSD had yet to take steps to prevent and/or address EHS among its athletes.

## Procedural Posture

The operative complaint is Plaintiffs' Second Amended Complaint. Docket No. 26. Defendants Steven Bush, Drayer Physical Therapy Institute, LLC, and Upstream Rehabilitation, Inc. filed their Answer to that Complaint. Docket No. 31. RCSD separately filed its own Answer, then filed the present motion to dismiss. Docket Nos. 35 and 36. Because RCSD filed its Answer prior to filing its motion to dismiss, the Court converts RCSD's motion under Rule 12(b)(6) into a motion under Rule 12(c). *See, e.g.*, *Mandujano v. City of Pharr, Tex.*, 786 F. App'x 434, 436 (5th Cir. 2019) (affirming the conversion of 12(b)(6) motion into one brought under 12(c) when filed after the close of the pleadings).

Plaintiffs enumerate six counts in their complaint. Only the first three counts are levied against RCSD, so the Court limits its focus to those counts. Although framed as three separate counts, Plaintiffs actually state only two claims for relief against RCSD: (1) a claim for *Monell* liability under 42 U.S.C. § 1983; and (2) a claim for Negligence under the Mississippi Tort Claims Act ("MTCA").[1] The Court considers them in turn.

## Legal Standard

"The standard for Rule 12(c) motions for judgment on the pleadings is identical to the standard for Rule 12(b)(6) motions to dismiss." *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019). To survive either motion, "a complaint need not contain 'detailed factual allegations';

---

[1] Plaintiffs style Count I as a "Substantive Due Process" *Monell* claim and Count II as a "Failure to Train" *Monell* claim. In practice, however—as discussed *infra*—Plaintiffs advance only a single theory of recovery under § 1983: namely, that RCSD failed to adopt a policy to address EHS in its high school athletes.

3

rather, it need only allege facts sufficient to 'state a claim for relief that is plausible on its face.'" *Littell v. Hou. Indep. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). *See also Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993) (no heightened pleading standard for municipal § 1983 liability). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

"Significantly, a complaint may proceed even if 'recovery is very remote and unlikely,' so long as the alleged facts 'raise a right to relief above the speculative level.'" *Littell*, 894 F.3d at 622 (quoting *Twombly*, 550 U.S. at 555–56). The court accepts the factual allegations as true and construes the complaint in the light most favorable to the Plaintiffs. *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th Cir. 1986).

**Analysis**

RCSD moved to dismiss Plaintiffs' § 1983 and MTCA claims. Because jurisdiction in this case is premised initially on the presence of the § 1983 claim, the Court considers it first.

**I.     Municipal Liability Under § 1983**

Because RCSD is a local government unit, the Lasters must show "(1) that a constitutional violation occurred and (2) that an official policy attributable to the school district's policymakers (3) was the moving force behind it." *Littell*, 894 F.3d at 623; *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (explaining that "municipalities and other local government units" may be sued under § 1983). In its motion to dismiss, RCSD, asserts that the Lasters have failed to adequately allege facts, when taken as true, that could support

4

any of the required elements necessary to state a claim under § 1983. The Court will address each of these elements in turn.

### a. Constitutional Deprivation

The Lasters allege that their son suffered a constitutional violation of his bodily integrity, culminating with his death. Amazingly, RCSD disputes that the Lasters' allegations amount to a violation of their son's constitutional rights.

The Fifth Circuit has for decades recognized that "the right to be free of state-occasioned damage to a person's bodily integrity is protected by the fourteenth amendment guarantee of due process." *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450-51 (5th Cir. 1994) (en banc) (quotation marks omitted). In that case the Fifth Circuit determined "that physical sexual abuse by a school employee violates that right." *Id.* at 445.

To reach this conclusion, the court in *Taylor* reviewed the development of Substantive Due Process law in this circuit—specifically considering *Jefferson v. Ysleta Independent School District*, 817 F.2d 303 (5th Cir. 1987) (involving a teacher lashing a student to a chair for two school days), and *Fee v. Herndon*, 900 F.2d 804 (5th Cir. 1984) (involving the arbitrary infliction of corporal punishment). In so doing, the panel explained that "[i]f the Constitution protects a schoolchild against being tied to a chair or against arbitrary paddlings, then surely the Constitution protects a schoolchild from physical sexual abuse . . . by a public schoolteacher." *Taylor*, 15 F.3d at 451. Applying this reasoning to the facts of this case, the Court finds that the Lasters have plausibly alleged a Constitutional deprivation.

"If the Constitution protects a schoolchild against being tied to a chair or arbitrary paddlings," *id.*, then surely the Constitution protects a schoolchild from the deprivation *of his life* if it is caused by the deliberate indifference of his coaches in an overly strenuous

5

football practice during which he was denied relief or preventative measures despite exhibiting symptoms of exertional heat stroke, including vomiting and loss of consciousness. This finding is further bolstered by the plain text of the Due Process Clause, which specifically prohibits state deprivations of "*life*, liberty or property without due process of law[.]" U.S. CONST. AMEND. XIV (emphasis added); *see also Roventini v. Pasadena Indep. Sch. Dist.*, 981 F. Supp. 1013, 1019 (S.D. Tex. 1997) ("If the Constitution protects a student from physical abuse by teachers, it must also protect a student from being run to death by his coaches." (citation modified)), *vacated by* 183 F.R.D. 500 (basing vacation on the district court learning that the allegations underpinning its earlier decision were false).

Harm sufficient to state a constitutional deprivation under § 1983 must be based on more than unintentional negligent oversight. *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992). RCSD's assertion that a violation of constitutional rights has not been alleged here, amounts to an argument that Plaintiffs' operative complaint merely states a negligence claim disguised as a constitutional deprivation. The Court rejects RCSD's characterization of Plaintiffs' pleading. Plaintiffs' factual allegations—specifically the allegations that RCSD was aware of the dangers of EHS and how to prevent it—amount to allegations of materially more than a negligence claim.[2]

### b.   An Official Policy as the Moving Force

As an initial matter, RCSD argues that Plaintiffs have failed to properly name a policymaker, which RCSD maintains is the school board. Docket No. 37 at 10. The Court need

---

[2] Ultimately, Plaintiffs must still meet substantial proof obligations. At this stage, however, the Court cannot and need not ascertain whether Plaintiffs' proof will rise above evidence of one or more Defendants' negligence to the necessary "deliberate indifference" standard. *See infra* Section I.b. The Court finds that the well-pleaded allegations in the operative complaint have met the bar necessary to avoid dismissal at this stage.

not labor long on this issue since "failing to plead the specific identity of the policymaker" is not a basis for dismissal at this stage in litigation. *Groden v. City of Dall.*, 826 F.3d 280, 285 (5th Cir. 2016). "[T]he Supreme Court has repeatedly emphasized that the identity of the policymaker is a question of law, not of fact—specifically, a question of state law." *Id.* at 284. RCSD's argument is unavailing, as the ultimate policymaker at issue will be determined as a matter of law. The Court moves on to consider the policy at issue.

RCSD correctly points out that Plaintiffs have not alleged that a policy affirmatively adopted by the school district's policymaker was the moving force behind their son's death. Instead, Plaintiffs have alleged that the failure of the school district's policymaker to adopt precautions designed to identify and address exertional heat stroke was the moving force behind Trey's preventable death.

Generally, a "municipal 'policy' must be a deliberate and conscious choice by a municipality's policy-maker." *Rhyne*, 973 F.2d at 392 (citation omitted). That said, a "municipal policy-maker's failure to adopt a precaution can be the basis for § 1983 liability," so long as "such omission [] amount[s] to an intentional choice, not merely an unintentionally negligent oversight." *Id.* (citations omitted). "The Supreme Court has held that municipal failure to adopt a policy does not constitute such an intentional choice unless it can be said to have been 'deliberately indifferent.'" *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). "A failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights." *Id.* (citing same).

When the allegations that Plaintiffs style in their Complaint as counts one and two are taken together and cast in the light most favorable to Plaintiffs, they state a single theory of

7

municipal liability under § 1983: RCSD lacked a policy to prevent and address EHS in its high school student athletes, despite knowing of the dangers of EHS and knowing that, if left unaddressed, it could lead to the type of the harm Trey suffered. The failure to adopt a policy underpins the Lasters' *Monell* claim. The Lasters' "failure to train" allegations amount to a total failure, rather than alleging the existence of a facially valid policy that RCSD simply failed to train its employees to implement in a constitutional manner.[3] In any event, the same "deliberate indifference" showing must be made in either instance. *See Littell*, 894 F.3d at 624 (requiring that to demonstrate deliberate indifference "Plaintiffs must show that, in light of the duties assigned to specific officers or employees, the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers can reasonably be said to have been deliberately indifferent to the need."(citation modified)).

The Supreme Court and the Fifth Circuit have emphasized that the deliberate indifference inquiry, especially in cases such as this one where no pattern of constitutional violations has been alleged, must focus on whether constitutional deprivation was the "obvious" or "highly predictable consequence" of the absent policy or failure to train. *Id.* ("But even absent proof of pattern, deliberate indifference can still be inferred if the factfinder

---

[3] *Compare Gonzalez v. Ysleta Indep. Sch. Dis.*, 996 F.2d 745, 757 (5th Cir. 1993) ("In the absence of a facially unconstitutional policy, that is, 'a policy of not taking reasonable steps to train its employees,' plaintiffs may establish the requisite fault by proving that 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.' It is only with this additional showing that a 'policy of inaction' becomes an actionable 'decision by the city itself to violate the Constitution.'") (quoting *Canton*, 489 U.S. at 390, 395) (O'Connor, J., concurring), *with Littell*, 894 F.3d at 624 (describing the more traditional "failure to train" claim as follows: "Under *Canton*, when a municipal entity enacts a facially valid policy but fails to train its employees to implement it in a constitutional manner, that failure constitutes 'official policy' that can support municipal liability if it 'amounts to deliberate indifference.'" (quoting 489 U.S. at 388).

8

determines that the risk of constitutional violations was or should have been an 'obvious' or 'highly predictable consequence' of the alleged training inadequacy." (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997)).[4] The Fifth Circuit has further cautioned that "[s]uch an inference is possible in only very narrow circumstances," requiring that the "municipal entity must have failed to train its employees concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face." *Id.* at 624-25 (citation modified). In conducting this inquiry, the Court considers whether the policymaker had actual or constructive knowledge that constitutional deprivations would occur.[5]

At this stage, the Court need only determine whether Plaintiffs have alleged facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555–56. That is, have the Lasters pleaded "factual content that allows the court to draw the reasonable inference that" (1) RCSD's policymaker had actual or constructive knowledge of the dangers of EHS and its methods of prevention; (2) the constitutional deprivation complained of here

---

[4] *See also Burge v. St. Tammany Par.*, 336 F.3d 363, 373 (5th Cir. 2003) ("[I]n a limited set of cases, a plaintiff, unable to show a pattern of constitutional violations, may establish deliberate indifference by showing a single incident with proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights," such that "it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy or failure to train." (quotation marks omitted)); *Drake v. City of Haltom*, 106 F. App'x 897, 900 (5th Cir. 2004) (reversing grant of motion to dismiss because the Fifth Circuit was "unwilling to say, at [the pleading stage], that it is not obvious that male jailers who receive *no* training and who are left virtually unsupervised might abuse female detainees." (emphasis in original)).

[5] "To prove deliberate indifference," Plaintiffs must allege facts sufficient to "show that [RCSD] had actual or constructive knowledge that constitutional violations would occur similar to those that allegedly caused [Trey]'s injuries." *Chavez ex rel. J.C. v. Brownsville Indep. Sch. Dist.*, No. 23-40640, 2025 WL 445045, at *2 (5th Cir. Feb. 10, 2025). *See also Brumfield v. Hollins*, 551 F.3d 322, 331 (5th Cir. 2008) ("The objective deliberate indifference standard considers not only what the policymaker actually knew, but what he should have known[.]") (citation omitted); *id.* (municipal liability requires "[k]nowledge on the part of a policy maker, either actual or constructive, that a constitutional violation will most likely result") (cleaned up).

9

was an obvious or highly predictable consequence of RCSD's failure to adopt an EHS prevention policy; and (3) this type of constitutional deprivation was likely to arise in recurrent situations that RCSD's employees, staff, or officers were certain to face? *Iqbal*, 556 U.S. at 663. The Court finds that they have.

Plaintiffs alleged that RCSD is a member of MHSAA and NFHS. Docket No. 26 ¶ 1. Plaintiffs further alleged that mere days before their son's death, MHSAA and NFHS specifically warned their member schools of the dangers of exertional heat stroke, including that it could result in the preventable deaths of high school athletes, and "provided specific instructions on the type of EHS preventative measures" that should be present at football practices. *Id.*

Plaintiffs further alleged that, despite these warnings, Trey's coaches conducted the first football practice of the year on August 1st, in a heat index of 103 degrees, and immediately required students to begin intense conditioning drills without an acclimatization period. *Id.* ¶¶ 2, and 16-17. Plaintiffs alleged that Trey began exhibiting symptoms of EHS, including dizziness, disorientation, stumbling, and vomiting twice, before he ultimately lost consciousness. *Id.* ¶¶ 17-18. Plaintiffs allege that there were no EHS preventative measures on the practice field, *id.* ¶¶ 2-3, and 19; and, in response to Trey's condition, his coaches kept him "on the ground for several minutes before placing him in the back of a hot pick-up truck[.]" *Id.* ¶ 2. According to Plaintiffs, that response, coupled with the lack of preventative measures on the practice field, indicates a failure by RCSD to adopt an EHS prevention policy and/or train its staff regarding EHS. *Id.* ¶¶ 21, 39-41, and 45-51.

These allegations, when taken as true, plausibly show that RCSD's policymaker had actual or constructive knowledge of the dangers posed by EHS and the need to adopt a policy

to prevent EHS in its high school football players—to prevent precisely the type of constitutional deprivation alleged here. Plaintiffs further allege sufficient facts to infer a failure to train RCSD staff on identifying and treating EHS at football practice. Based on these allegations, there is more than enough for the Court to infer that the school district's policymaker could have predicted that the death of one of its high school football players from EHS would occur, in the absence of an affirmative policy and/or training on preventing and addressing EHS. This is especially true, given the setting in which RCSD football players routinely practice: August in Mississippi.

**II.  State Law Negligence Claim**

Plaintiffs also assert a claim of negligence against RCSD, pursuant to the waiver of governmental immunity provided by the MTCA.

RCSD "constitutes a 'governmental entity' and a 'political subdivision' pursuant to the Mississippi Tort Claims Act (MTCA)." *Covington Cnty. Sch. Dist. v. Magee*, 29 So. 3d 1, 4 (Miss. 2010) (quoting MISS. CODE ANN. § 11-46-1 (2002)). "[T]he MTCA waives immunity for claims for money damages arising out of the torts of government entities and employees while acting within the course and scope of their employment to the extent set forth in the MTCA. This waiver of immunity is subject to exemptions." *Id.*; *see also J.E. v. Jackson Pub. Sch. Dist.*, 264 So. 3d 786, 791 (Miss. Ct. App. 2018) ("Under the MTCA, sovereign immunity is waived for claims for money damages arising out of the torts of governmental entities and their employees, *unless they are explicitly exempted from this waiver* under Section 11-46-9(1) of the Mississippi Code." (emphasis added) (quotation marks omitted)).

The question before the Court is not whether Plaintiffs have alleged a proper negligence claim. Instead, as RCSD correctly argues, the Court's determination turns first on

11

whether the acts or omissions alleged are ministerial or discretionary in nature. If those acts or omissions are ministerial, immunity does not apply; if they are discretionary, then the Court must continue its analysis to determine whether discretionary-function immunity applies under the MTCA. *See Magee*, 29 So. 3d at 8 (Kitchens, J., dissenting) ("It is well-settled that Mississippi Code Section 11-46-9(1)(d) does not bestow immunity for all discretionary governmental acts.") (citations omitted).

"A ministerial duty is a duty that is positively designated by statute, ordinance, or regulation." *Jackson Pub. Sch. Dist.*, 264 So. 3d at 791 (quotation marks and citation omitted). Plaintiffs have not identified such a source that positively designated a duty with respect to EHS prevention, *at the time the injury occurred*. Instead, Plaintiffs point to a mandate from MHSAA requiring member-schools to take the Wet Bulb Global Temperatures prior to conducting football practice. Docket No. 26 ¶ 30. That guidance, however, did not become mandatory until after the events of August 1, 2022—the time of the alleged acts or omission. *See* Docket No. 41-1 (executive committee minutes of the Mississippi High School Activities Association, dated July 19, 2023).

Because the act or omission is discretionary, the Court must proceed to the second step of discretionary-immunity analysis. "If the act is deemed to be a discretionary duty, the second step calls for a factual determination of whether the choice involves social, economic, or political policy." *Harris v. McCray*, 867 So. 2d 188, 195 (Miss. 2003) (McRae, J., dissenting) (citing *Jones v. Miss. Dept. of Trasp.*, 744 So. 2d 256, 260 (Miss. 1999)). *See also J.S. v. Ocean Springs Sch. Dist.*, --- So. 3d ----, No. 2023-CA-1009-SCT, 2025 WL 999088, at *9 (Miss. Apr. 3, 2025) (explaining that "the existing element of choice or discretion is not enough for discretionary immunity to apply; this Court also must decide whether that choice or

judgment involved social, economic, or political-policy considerations.") (quotation marks and citation omitted). This step is necessary, because "[o]nly those functions which by nature are policy decisions, whether made at the operational or planning level, are protected." *Stewart v. City of Jackson*, 804 So. 2d 1041, 1048 (Miss. 2002) (quotation marks and citation omitted). "Only when both parts of the test are met does a government defendant enjoy discretionary-function immunity." *Wilcher v. Lincoln Cnty. Bd. of Supervisors*, 243 So. 3d 177, 187 (Miss. 2018).

This second step—determining whether a decision involved social, economic or political policy—is, at least in part, a question of fact. *Harris*, 867 So. 2d at 195 (McRae, J., dissenting) ("[T]he second step calls for a factual determination[.]"); *see also, e.g.*, *Magee*, 29 So. 3d 1 (analyzing discretionary-function immunity at summary judgment stage); *J.S. v. Ocean Springs Sch. Dist.*, 2025 WL 999088 (same); *Magee*, 29 So. 3d at 8 (Kitchens, J., dissenting) ("The record is incomplete, as neither the plaintiff nor this Court knows what the coaches did or did not do on the day of Lonnie's death.").

At this early stage of the case, the Court lacks sufficient factual detail to determine whether the actions taken by Trey's coaches—as distinguished from the inaction of RCSD's policymaker discussed *supra*—were susceptible to policy analysis. Making such a determination requires a more developed record.

## Conclusion

Based on the foregoing, Rankin County School District's motion to dismiss, Docket No. 36, is denied. The parties are ordered to contact the chambers of the Magistrate Judge within 10 days to coordinate a case management conference.

**SO ORDERED**, this the 27th day of August 2025.

/s/ Carlton W. Reeves  
UNITED STATES DISTRICT JUDGE